CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 19, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **CHARLES VINCENT COX,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:25-cv-00500** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **OFFICER HAILEY, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Charles Vincent Cox, a state pretrial detainee proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against the Southwest Virginia Regional Jail Authority (Jail Authority) and two correctional officers at the regional jail in Duffield, Virginia: Officer Hailey and Officer Hopkins. The defendants have moved to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6), ECF No. 13, and they have moved for summary judgment on the defense of failure to exhaust administrative remedies, ECF No. 15. Cox has filed an affidavit in opposition to the motions, ECF No. 17, and the motions are ripe for review. For the following reasons, the partial motion to dismiss is **GRANTED**, and the motion for summary judgment on the exhaustion defense is **DENIED**.

## I. Background

### A. Cox's Verified Complaint

Cox alleges that he was booked into the Duffield jail after midnight on March 5, 2025, after being assaulted by police officers. Compl., ECF No. 1, at 3. Prior to his arrest, Cox suffered a spinal injury, and he was unable to walk on his own when he arrived at the

jail. Id. After Cox was placed in a cell in the booking area, Officer Hopkins and another officer arrived with a "suicide suit" and demanded that he change into it. Id. When Cox did not move quickly enough, the officers picked him up and carried him to an observation cell. Id. Hopkins then "forcibly ripped" Cox's pants and underwear off his body, as female correctional officers watched, and placed the suicide suit on Cox. Id. at 2–4.

Cox alleges that Officer Hailey and another correctional officer subsequently arrived at the cell with a wheelchair. Id. at 4. When Cox did not get in the wheelchair fast enough, Hailey grabbed him by one of his left fingers and forcibly pulled him onto the floor, causing the finger to break. Id. Hailey then twisted the broken finger with his left hand and "began punching [Cox] in the head with his right hand." Id. After being placed in the wheelchair operated by Hailey, Cox "watched [his] right foot be run over and twisted," causing blood to run down his foot. Id.

Based on these allegations, the defendants construed Cox's form complaint under § 1983 to assert claims for (1) invasion of the right to privacy under the Fourth Amendment; (2) excessive or objectively unreasonable force in violation of the Due Process Clause of the Fourteenth Amendment; and (3) negligence. Defs.' Mot. to Dismiss, ECF No. 13, at 2; see also Defs.' Answer, ECF No. 14, at 2.

**B. Evidence Relevant to the Defense of Failure to Exhaust Administrative Remedies**

The Jail Authority has an inmate grievance procedure that is outlined on page 29 of its inmate handbook. Patrick Aff., ECF No. 15-1, ¶ 2. The procedure includes the following steps:

> 1. You must make a good faith attempt to resolve the issue through informal channels by use of a Request Form or Medical Request Form which are located on the Kiosk, where available.
>
> 2. You may file a grievance upon dissatisfaction in the answer to the request form **within 7 days of the occurrence**. A grievance may be submitted on the Kiosk where available. If the Kiosk is not accessible, the inmate may be given a grievance form. All prerequisites of the grievance procedure must be exhausted prior to filing the grievance . . . .
>
> 3. The validity of the grievance will be reviewed to determine if it meets the definition of a grievance and if proper informal resolution attempts have been made . . . .
>
> 4. When you receive a response to a grievance and [are] not satisfied, you may appeal the result, in writing, **within 7 days of receipt of the response**, to the Chief of Security, who will process the appeal.

Patrick Aff. Ex. A, ECF No. 15-2, at 29 (emphasis in original).

On March 8, 2025, Cox signed an inmate orientation form. Patrick Aff. Ex. B, ECF No. 15-3. By signing the form, Cox certified that he had "been advised how to access the Kiosk and how to access the Inmate Handbook via Kiosk, <u>or</u> [had] been issued the Inmate Handbook." <u>Id.</u> (emphasis added). Cox's affidavit indicates that he did not receive a hard copy of the handbook and that the grievance procedure outlined in the handbook was not explained to him at the time he signed the form. Pl.'s Aff., ECF No. 17, ¶ 2.

Cox's affidavit also indicates that he was housed in the medical unit following the incidents giving rise to this action, where he had "no forms, no pen, [and] no clue of procedure." <u>Id.</u> ¶ 3. Cox asserts that he requested a grievance form multiple times "to no avail" and that he "was never given a paper form." <u>Id.</u> Cox further alleges that he "had no

idea how to work a kiosk" once he was moved to general population and that other inmates had to help him use the kiosk because of his physical impairments. Id. ¶¶ 3, 6, and 9.

The defendants' evidence indicates that Cox was placed on suicide watch on March 10, 2025, during which he "reported to an officer that he was 'forcibly stripped against his will and raped by three officers.'" Patrick Aff. ¶ 7. When the Jail Authority investigated Cox's report, Cox "advised he did not want to make a sexual assault complaint because there was no penetration and no sexual assault." Id.

The defendants' evidence reflects that Cox used a kiosk on March 18, 2025, to submit the first of approximately 50 electronic requests or grievances. Patrick Aff. Ex. C, ECF No. 15-4, at 1. In the first request, Cox asked for information regarding his pending charges and for the name of his attorney. Id.

On April 12, 2025, Cox used a kiosk to submit a grievance. Id. at 10. The grievance included the following allegations:

> I am trying to file rape charges against Hopkins. And a beating by [Correctional Officer] Haley and all present at time of booking. I've begged for a grievance form not aware I must do it here. I struggle to type because of beginning stages of multiple sclerosis. I need paper for I have to use one arm to hold the other still. I'm just now after more than a month possibly getting my phone pin straight. I haven't gotten to speak to anyone since booking. Need to contact my attorney to seize video evidence and get names of nurses and other [correctional officers] from booking.

Id.

On April 20, 2025, Cox used a kiosk to submit a request containing similar allegations. Id. at 12. Cox alleged that he wanted to file "rape charges" against Correctional Officer Hopkins because Hopkins and another identified officer ripped off his clothes in

front of two or three female officers. Id. Cox further alleged that he was subsequently beaten in a wheelchair by Correctional Officer Hailey. Id. Cox also noted that he had difficulty typing due to tremors and other medical issues. Id.

## II. Standards of Review

Under Federal Rule of Civil Procedure Rule 12(b)(6), defendants may move to dismiss a complaint for failure to state a claim upon which relief may be granted. To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Pro se litigants still must allege sufficient facts to state a plausible claim for relief. Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016).

Under Rule 56, a party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Id. When ruling on a motion for summary judgment, the court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). "The court . . . cannot weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015).

## III. Discussion

### A. Defendants' Partial Motion to Dismiss

In their partial motion to dismiss under Rule 12(b)(6), the defendants argue that the allegations in the complaint are insufficient to state a claim for violation of Cox's right to bodily privacy under the Fourth Amendment. The defendants also seek dismissal of any claim against the Jail Authority and any claim of mere negligence. The court will address each argument in turn.

#### 1. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Hudson v. Palmer, 468 U.S. 517, 525 (1984) (internal quotation marks omitted). As relevant here, pretrial detainees "retain some Fourth Amendment rights upon commitment to a corrections facility," including a limited right to bodily privacy. Bell v. Wolfish, 441 U.S. 520, 558 (1979); see also King v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016) (agreeing with other circuits that, "under Wolfish, prisoners

retain an interest in some degree of bodily privacy"). "In this Circuit, an inmate's right to bodily privacy in prison encompasses the involuntary exposure of his genitals in the presence of the opposite sex." Wilkins v. Upton, 639 F. App'x 941, 944 (4th Cir. 2016) (citing Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981)). However, while "routinely or regularly exposing an unclothed [male] inmate to female guards may constitute a constitutional violation," isolated incidents are generally not actionable. Ashann-Ra v. Virginia, 112 F. Supp. 2d 559, 565 (W.D. Va. 2000) (noting that many courts presented with the question "have held that a male inmate's constitutional rights are not violated when a female guard is permitted to view his genitals on a limited basis") (collecting cases); see also Small v. Wetzel, 528 F. App'x 202, 207 (3d Cir. 2013) (declining to hold that the mere presence of women during a lockdown strip search performed on a single occasion rendered the search unconstitutional); Thomas v. Shields, No. 92-6678, 1992 U.S. App. LEXIS 32570, at *1–3 (4th Cir. 1992) (holding that an inmate's "right to privacy was not violated by the occasional, inadvertent encounter with female guards" while using the shower or toilet).

Here, Cox does not allege that his genitals or buttocks were regularly or routinely exposed in front of female officers. Instead, his complaint describes a single incident in which his pants and underwear were removed from his body in the presence of female officers before he was placed in a suicide suit. Even if the court assumes that Cox's genitals or buttocks were momentarily exposed in the process, the court agrees with the defendants that his allegations do not rise to the level of a Fourth Amendment violation. Accordingly, the partial motion to dismiss will be granted with respect to any claim for violation of Cox's right to bodily privacy under the Fourth Amendment.

### 2. Jail Authority

The complaint also fails to state a claim under § 1983 against the Jail Authority. Although "regional jail authorities can be sued under §1983," Branham v. City of Lynchburg, 644 F. Supp. 3d 215, 219 (W.D. Va. 2022) (citing Kitchen v. Upshaw, 286 F.3d 179, 184 (4th Cir. 2002)), it is well settled that local or regional government entities "are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692 (2011)). Instead, they are responsible only for their "own illegal acts." Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 402 (4th Cir. 2014). In particular, a regional jail authority or other local government entity can be held liable under § 1983 only if the plaintiff shows that the entity's policy or custom was a "moving force" beyond a constitutional violation. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981); see also Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) ("Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach.") (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)).

Cox's complaint does not allege that any custom or policy of the Jail Authority was responsible for the constitutional deprivations of which he complains, and he has no viable § 1983 claim against the Jail Authority based solely on its employment relationship with Correctional Officer Hailey, Correctional Officer Hopkins, or other staff members. Consequently, the complaint fails to state a claim against the Jail Authority.

### 3. Negligence

The defendants also seek dismissal of any claim under § 1983 that "sound[s] in negligence." Defs. Mot. to Dismiss at 2; see also id. (construing the complaint to set forth a "cause of action for . . . negligence (running over [Cox's] foot)"). The court does not read the complaint to assert a distinct claim of negligence, separate and apart from the allegations of excessive or objectively unreasonable force. See, e.g., Cosby v. Tawana, No. 3:19-cv-00401, 2019 U.S. Dist. LEXIS 72426, at *27 (D. Conn. Apr. 30, 2019) (allowing claims of excessive force to proceed that arose from four incidents involving the use of force, the first of which occurred when an officer ran over the inmate's right leg and foot with a wheelchair). Nonetheless, the defendants are correct that mere negligence is "not actionable" under § 1983. Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995); see also Daniels v. Williams, 474 U.S. 327, 328 (1986) (explaining that the Due Process Clause is not implicated by a merely negligent act). Accordingly, to the extent Cox intended to assert a claim of negligence under § 1983, such claim must be dismissed.

## B. Defendants' Motion for Summary Judgment on Exhaustion Grounds

The defendants have also moved for summary judgment on the basis that Cox failed to exhaust his administrative remedies prior to filing suit. as required by the Prison Litigation Reform Act (PLRA). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme has held that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002), and that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court," Woodford v. Ngo, 548 U.S. 91, at 88, 90 (2006). Additionally, given the "mandatory language" of the PLRA, courts have no discretion to excuse a failure to exhaust. Ross v. Blake, 578 U.S. 632, 639 (2016).

Nonetheless, because the PLRA only requires the exhaustion of "available" administrative remedies, "a prisoner 'need not exhaust remedies if they are not 'available.''" Griffin v. Bryant, 56 F. 4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 635-36); see also Gowen v. Winfield, 130 F.4th 162, 176 (4th Cir. 2025) ("Of course, if an administrative remedy proves 'unavailable' to an inmate, he is considered to have satisfied the exhaustion requirement.") (citing Ross, 578 U.S. at 642). "An administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'" Gowen, 130 F.4th at 176 (quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008)). "This includes instances where: 1) the administrative procedure is 'a simple dead end'—in other words, the prison officials are 'unable or consistently unwilling to provide any relief'; 2) the process is 'so opaque' that it becomes practically 'incapable of use' such that 'no ordinary prisoner can discern or navigate it'; or 3) the prison "thwart[s] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. (quoting Ross, 578 U.S. at 643–44). "Failure to exhaust is an affirmative defense for which the [defendants] bear the burden of proof." Id.

Here, the defendants argue that Cox did not file a grievance "within 7 days of the offending issue," as required by the grievance procedure outlined in the inmate handbook. Defs.' Mot. Summ. J., ECF No. 15, at 5. Viewing the record in the light most favorable to Cox, however, the court concludes that a genuine factual dispute exists as to whether Cox was prevented from properly exhausting his administrative remedies through no fault of his own.

Cox's sworn statements indicate that he was housed in the medical unit following the incidents giving rise to this action, that he did not have access to forms or an inmate handbook while housed in the medical unit, and that his requests for grievance forms were denied or ignored. Cox Aff. ¶¶ 2–3. Although the inmate handbook permits grievances to be submitted through an electronic kiosk "where available," Patrick Aff. Ex. A at 29, there is no evidence establishing that Cox had access to a kiosk while housed in the medical unit or gained access to a kiosk in general population before the seven-day grievance deadline expired. Instead, the records submitted by the defendants indicate that Cox utilized a kiosk for the first time on March 18, 2025, approximately 12 days after he was purportedly assaulted in the booking area. See Patrick Aff. Ex. C at 1; see also Patrick Aff. ¶ 5 (emphasizing that Cox "began to use the grievance procedures on 3/18/25"). If Cox did not have access to a kiosk or grievance forms during the intervening period, as the evidence viewed in his favor suggests, then the inmate grievance procedure was "unavailable" to Cox through no fault of his own and the exhaustion requirement "does not come into play." Ross, 578 U.S. at 642–643; see also Hill v Snyder, 817 F.3d 1037, 1041 (7th Cir. 2016) (explaining that "exhaustion is not required when the prison officials responsible for

providing grievance forms refuse to give a prisoner the forms"); Hill v. O'Brien, 387 F. App'x 396, 401 (4th Cir. 2010) (noting that "when prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality") (quoting Kaba v. Stepp, 458 F. 3d 678, 684 (7th Cir. 2006)).

For these reasons, the court concludes that a genuine dispute of material fact exists as to whether the grievance procedure set forth in the inmate handbook was actually available to Cox during the relevant seven-day period. Consequently, the defendants are not entitled to summary judgment on the exhaustion defense.

## IV. Conclusion

For the reasons stated, the defendants' partial motion to dismiss, ECF No. 13, is **GRANTED**, and their motion for summary judgment on the defense of failure to exhaust administrative remedies, ECF No. 15, is **DENIED**.

An appropriate order will be entered.

Entered: August 18, 2026

Mike Urbanski
Senior U.S.
District Judge
2026.08.18
18:25:15 -04'00'

Michael F. Urbanski
Senior United States District Judge